Citation Nr: 1518712 
Decision Date: 04/30/15 Archive Date: 05/05/15

DOCKET NO. 08-12 895 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Roanoke, Virginia


THE ISSUES

1. Entitlement to service connection for an acquired psychiatric disorder, to include posttraumatic stress disorder (PTSD).

2. Entitlement to service connection for a skin rash, other than onychomycosis.

3. Entitlement to service connection for a disability claimed as nervous stomach.

4. Entitlement to service connection for gastroesophageal disease, to include reflux and ulcers.

5. Entitlement to service connection for diabetes mellitus, type II.

6. Entitlement to service connection for erectile dysfunction, to include as secondary to diabetes mellitus, type II.

7. Entitlement to service connection for a condition manifested by tingling of the feet.

8. Entitlement to service connection for a cardiovascular disorder, to include hypertension, coronary artery disease, and plaque in the aorta.

9. Entitlement to service connection for a back disorder.

10. Entitlement to service connection for a sleep disorder.

11. Entitlement to service connection for a dental disorder.


REPRESENTATION

Appellant represented by: The American Legion


WITNESSES AT HEARING ON APPEAL

Appellant & Daughter


ATTORNEY FOR THE BOARD

J. Nichols, Associate Counsel


INTRODUCTION

The Veteran served on active duty from January 1961 to January 1964.

This appeal comes before the Department of Veterans Affairs (VA) Board of Veterans' Appeals (Board) from rating decisions of the VA Regional Office (RO) in Roanoke, Virginia that denied service connection for an acquired psychiatric disorders, including PTSD, skin rash, hemorrhoids, nervous stomach, gastroesophageal disease, to include reflux and ulcers, diabetes mellitus, type II, erectile dysfunction, tingling of the feet, a cardiovascular disorder, to include hypertension, coronary artery disease and plaque in the aorta, a back disorder, onychomycosis, a sleep disorder, and a dental disorder.

The Veteran was afforded a Board hearing in September 2011 before the undersigned Veterans Law Judge (VLJ) in Washington, DC. The transcript is of record. 

In February 2012, the Board, in pertinent part, denied the Veteran's claim of entitlement to service connection for onychomycosis; the Board remanded the claim for entitlement to service connection for hemorrhoids for further development. The Veteran appealed the decision to the United States Court of Appeals for Veterans Claim (Court). In August 2012, the Court granted a Joint Motion for Partial Remand (JMR) vacating the February 2012 decision and remanding the Veteran's claim for entitlement to service connection for onychomycosis for further development. Service connection for hemorrhoids was subsequently denied in a Board determination in May 2013. In January 2014, the Board granted service connection for onychomycosis. 

Pursuant to a settlement agreement in the case of National Org. of Veterans' Advocates, Inc. v. Secretary of Veterans Affairs, 725 F. 3d 1312 (Fed. Cir. 2013), the Board's February 2012 decision was identified as having been potentially affected by an invalidated rule related to the duties of the VLJ that conducted the September 2011 hearing. In order to remedy any such potential error, the Board sent the Veteran a letter notifying him of an opportunity to receive a new hearing and/or a new decision from the Board. Subsequently, the Veteran requested only to have the prior decision vacated and a new one issued in its place. This decision satisfies that request. The Board's October 2014 Order to Vacate effectively vacated the Board's prior February 2012 decision. 

In support of his claims, the Veteran submitted additional evidence which included additional statements, and duplicates of service personnel records, service medical records, and some evidence previously received and considered by the RO. As will be discussed in detail, infra, the Board finds that we can proceed with adjudication of these matters as the newly submitted evidence is cumulative of the evidence already of record (also previously considered) and not pertinent to this appeal. Thus, obtaining a RO waiver of initial consideration is unnecessary. To the extent that the Veteran may claim its relevance, this will be further addressed in the analysis section below. 

The issue of entitlement to service connection for an acquired psychiatric disorder, to include PTSD, is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. Skin rash other than onychomycosis was not manifest in service and is unrelated to service.

2. A disability claimed as nervous stomach was not manifest in service and is unrelated to service.

3. Gastroesophageal disease, to include reflux and ulcer, was not manifest in service or within one year of discharge from active duty, and is unrelated to service.

4. Diabetes mellitus, type II, was not manifest in service or within one year of discharge from active duty, and is unrelated to service.

5. Erectile dysfunction was not manifest in service and is unrelated to service.

6. Tingling of the feet was not manifest in service or within one year of discharge from active duty, and is unrelated to service.

7. Cardiovascular disorder, to include hypertension, coronary artery disease and plaque in the aorta, was not manifest in service or within one year of discharge from active duty, and is unrelated to service.

8. A back disorder was not manifest in service or within one year of discharge from active duty and is unrelated to service.

9. A sleep disorder was not manifest in service and is unrelated to service.

10. The Veteran's dental disorder is not a compensable disability.


CONCLUSIONS OF LAW

1. Skin rash other than onychomycosis was not incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. § 3.102, 3.303 (2014).

2. A disability claimed as nervous stomach was not incurred in or aggravated by service. 38 U.S.C.A. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. § 3.102, 3.303 (2014).

3. Gastroesophageal disease, to include reflux and ulcers, was not incurred in or aggravated by service, and may not be presumed to have been incurred in service. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2014).

4. Diabetes mellitus, type II, was not incurred in or aggravated by service, and may not be presumed to have been incurred in service. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2014).

5. Erectile dysfunction was not incurred in or aggravated by service. 38 U.S.C.A. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. § 3.102, 3.303 (2014).

6. Tingling of the feet was not incurred in or aggravated by service, and an organic disease of the nervous system may not be presumed to have been incurred in service. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2014).


7. A cardiovascular disorder, to include hypertension, coronary artery disease and plaque in the aorta, was not incurred in or aggravated by service, and may not be presumed to have been incurred in service. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2014).

8. A back disorder was not incurred in or aggravated by service, and arthritis may not be presumed to have been incurred in service. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2014).

9. A sleep disorder was not incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. § 3.102, 3.303 (2014). 

10. The criteria for service connection for a dental condition are not met. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. § 4.150, Diagnostic Codes 9900-9916 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA's Duties to Notify and Assist

As provided for by the VCAA, the United States Department of Veterans Affairs (VA) has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2014). Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). The notice requirements of the VCAA apply to all elements of a claim for a higher rating including: (1) veteran status; (2) existence of a disability; (3) a connection between the Veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

Here, the duty to notify was satisfied prior to the initial decisions on the claims by letters dated in September 2006, February 2007, and May 2007 that addressed the required notice elements. The letters informed the appellant of what evidence was required to substantiate the claims and of the appellant's and VA's respective duties for obtaining evidence. The letters also addressed the effective date elements of the claims. For these reasons, the Board may proceed to decide the appeal.

The Board finds that the necessary development has been accomplished and that appellate review may proceed without prejudice to the appellant. See Bernard v. Brown, 4 Vet. App. 384. Extensive private clinical records have been submitted in support of the claims and reviewed. VA clinical data are also of record and have been considered. The voluminous evidence of record, including the appellant's many statements, has been carefully considered. He has not indicated that there is outstanding evidence that has not been received or considered.

The Veteran has not been afforded a VA examination in connection with his claims. VA's duty to assist includes providing a medical examination or obtaining a medical opinion when one is necessary to render a decision on the claim. See McLendon v. Nicholson, 20 Vet. App. 79 (2006). Development is considered necessary if the information and evidence of record does not contain sufficient competent medical evidence to decide the claim, but contains: (1) competent evidence of diagnosed disability or symptoms of disability, (2) establishes that the veteran had an event, injury or disease in service, or has a presumptive disease during the pertinent presumptive period, and (3) indicates that the claimed disability may be associated with the in- service event, injury, or disease, or with another service-connected disability. 38 C.F.R. § 3.159(c)(4). The Board observes that there is no credible evidence of record showing that the Veteran was treated for or had a diagnosis of any of claims disorders during service, except for a dental condition, or that the claimed disabilities may be related to any event in service. Therefore, no examination is required. In this case, the factual foundation to support entitlement to service connection for the claimed disabilities has not been demonstrated. The Board thus finds that the evidence on file is adequate to render a decision on the claims, and that an examination is unnecessary (except in the case of the psychiatric claim).

As to the claim of entitlement to service connection for a dental condition, the operation of law precludes a favorable determination for the appellant. See Sabonis v. Brown, 6 Vet.App. 426 (1994). The Court has held that the VCAA is not applicable where further assistance would not aid the appellant in substantiating the claim. Wensch v. Principi, 15 Vet.App. 362 (2001); see also 38 U.S.C.A. § 5103A (a)(2). 

In addition, during the September 2011 Board hearing, the undersigned Veterans Law Judge (VLJ) clarified the issues of service connection on appeal, identified potential evidentiary deficits, and clarified the type of evidence that would support the appellant's claim. The VLJ left the record open for 30 days to allow for additional submission of evidence. The actions of the VLJ supplement the VCAA and comply with any related duties owed during a hearing. See 38 C.F.R. § 3.103.

The Board is not aware of the existence of any additional or relevant evidence that has not been obtained. No further notice or assistance to the appellant is required to fulfill VA's duty to assist in the development of the claims. See 38 U.S.C.A. § 5103A (a) (2); Dela Cruz v. Principi, 15 Vet. App. 143; Smith v. Gober, 14 Vet. App. 227 (2000); aff'd 281 F. 3d 1384 (Fed. Cir. 2002); see also Quartuccio v. Principi, 16 Vet. App. 183; Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991) (2002). As such, the claims are ready to be considered on the merits. 

Pertinent Law and Regulations

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Establishing service connection generally requires competent evidence of three things: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship, i.e., a nexus, between the claimed in-service disease or injury and the current disability. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303(a).

Where a veteran served continuously 90 days or more during a period of war or during peacetime service after December 31, 1946 and diabetes mellitus, type II, or arthritis, or a psychosis, or cardiovascular disease, or ulcer, or an organic disease of the nervous system becomes manifest to a degree of at least 10 percent within one year from the date of termination of service, such diseases shall be presumed to have been incurred in or aggravated by service, even though there is no evidence of the disorder during the period of service. 38 U.S.C.A. §§ 1101, 1112, 1113 (West 2014); 38 C.F.R. §§ 3.307, 3.309 (2014).

For the showing of chronic disease in service there is required a combination of manifestations sufficient to identify the disease entity and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word "chronic." Continuity of symptomatology after discharge is required where the condition noted during service is not, in fact, shown to be chronic or where the diagnosis of chronicity may be legitimately questioned. 38 C.F.R. § 3.303(b); see Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013) (the theory of continuity of symptomatology can be used only in cases involving those conditions explicitly recognized as chronic as per 38 C.F.R. § 3.309(a)). Service connection may also be granted for disability shown after service, when all of the evidence, including that pertinent to service, shows that it was incurred in service. 38 C.F.R. § 3.303(d).

Factual Background & Contentions

The Veteran has provided numerous statements in the record and has also presented testimony to the effect that his military duties included being a warehouseman in which he had to lift heavy loads and move them to various locations. He avers that this led to his developing a back problem, as well as when he injured the back during the Cuban Missile Crisis. He stated that he was treated at that time and was told he probably had a sprain or strain and was given medication. He states that while stationed in Metz, France, he came across an old German helmet that he touched and became concerned that it was contaminated with some type of chemical or biological agent. The appellant relates that after service he developed a skin condition in including rashes, fungal infection and jungle rot that he attributes to fungus in the shower stalls and barracks in France, as well as to environmental toxins. He states that his toes had not become brittle and elongated until after service, and that this was diagnosed in 2002 or 2003. 

The Veteran testified that he developed a nervous stomach, diabetes, coronary artery disease, plaque buildup in his aorta, heart disease, ulcers and high blood pressure from his military diet that was heavy in salt, sugar, saturated fats and cholesterol, and that this was substantiated by medical doctors and researchers. He stated that tingling of the feet was one of the symptoms of diabetes. The Veteran said that he had acid reflux, but that he had changed his diet and the condition was much improved to the extent that he did not know whether he currently had it. It was maintained that he suffered from erectile dysfunction and an inability to father children for more than a decade after service as the result of exposure to chemical, radiological or bacterial weapons or weapons systems. He stated that there an incident in the military when he was accosted by a squad of nine military police military and that this led to his developing PTSD, resulting in depression and a sleep disorder. The Veteran testified and stated in the record that the constant stress of being in the military, his brother being tragically killed in an automobile accident, and his having to go to his funeral and see him dead were factors leading to PTSD, as well as his wife having a miscarriage or two prior to his coming home in 1963, and financial difficulties. He said that this led to a state of constant sleeplessness, helplessness, and fearfulness because of his inability to affect any type of resolution to the problems. He stated that he had recurring nightmares and visions from PTSD.

The Veteran testified that he had a tooth extracted in service and that a bone or tooth fragment was left inside that led to an occasional sharp pain and difficulty chewing. He related that the fragment had been surgically removed by a dentist five to seven years before and that he did not have any more discomfort at all. 

Review of service treatment records discloses that in April 1961, the Veteran was seen for complaints of a "wisdom tooth cutting gums and swollen glands" for which he was referred to the dental clinic. No military dental records are of record. On examination in November 1963 at separation from service, urinalysis was negative for sugar and chest X-ray was negative. A blood pressure reading of 120/70 was recorded. It was noted that tooth #17 was missing. On the Report of Medical History, the appellant denied severe tooth or gum trouble, pain or pressure in chest, palpitation or pounding heart, high blood pressure, stomach, and intestinal trouble, sugar in urine, arthritis or rheumatism, bone, joint or other deformity, neuritis, frequent trouble sleeping, frequent or terrifying nightmares, depression or excessive worry, and nervous trouble of any sort. The chest, heart, cardiovascular system, abdomen and viscera, endocrine system, genitourinary system, spine, skin, and neurologic status were evaluated as normal. 

An application for service connection of the claimed disorders was received in August 2006.

Received in support of the claim was a private clinical record dated in May 1986 in which the Veteran denied diabetes, a heart condition, and high blood pressure and said he had never been hospitalized. Private dental records reflect treatment between 1986 and 2003 for tooth extractions, fitting of dentures and prophylactic care. The appellant was admitted in March 1991 with complaints of chest tightness associated with dyspnea, diaphoresis and anxiety without nausea and vomiting. He reported more chest pain upon arrival at the hospital. He underwent diagnostic testing resulting in a strongly positive stress test for myocardial ischemia for which he underwent cardiac catheterization. It was noted that in view of the single vessel critical mid left anterior artery disease and clinical status of premature coronary disease in the family, diabetes mellitus in himself and the whole clinical picture, PTCA [percutaneous transluminal coronary angioplasty] was recommended. This was performed in April 1991. It was reported that his medical history was positive for diabetes mellitus for which he was on Diabeta and 'nervous stomach.' Blood pressure was recorded as 130/70. It was noted that he was not hypertensive. 

Private clinical records dating from March 1995 reflect a blood pressure reading of 120-130/80. Following cardiac evaluation, the diagnoses were atherosclerotic coronary artery disease and type II diabetes mellitus. In January 1998, physical examination was followed by diagnoses of onychomycosis and dermatophytosis of the back. Records from Petersburg Urological Associates dating from January 1994 indicate that the Veteran was seen for prostate checks. A history of bilateral vasectomy was recorded. Erection was noted to be poor for which Viagra was prescribed. 

J. N. Clore, M.D., wrote in September 1997 that the Veteran had been seen in follow-up for type II diabetes for seven years. It was reported that examination on that date was unchanged but that he did have some decreased vibratory and light touch sensation in the feet. Dr. Clore wrote in March 1998 that the appellant's major concern was impotence, that he had noted a decrease in libido, as well as erectile function. It was added that "As you well know, decreased libido is infrequently due to diabetes, whereas difficulty with erections certainly is."

In January 1999, a blood pressure reading of 130/70 was recorded. The Veteran complained of neck pain of six to eight weeks' duration that was followed by an assessment of degenerative disc disease of the spine. In February 1999, he complained of a rash. Examination disclosed a hyperpigmented area of the back. A blood pressure reading of 120/60 was noted on that occasion. The assessments included contact dermatitis. In July 1999, a blood pressure reading of 128/70 was noted. Assessments included coronary artery disease, hypertension and diabetes mellitus, type II. 

A. S. Wax, DPM, noted in February 2002 that the Veteran presented with complaints of were brittle, discolored, elongated, reddened, inflamed toenails that were painful with ambulation, and that condition was worsening. Following examination, an impression of bilateral onychomycosis was recorded for which he was treated. The appellant continued in treatment for this condition. A private clinic noted dated in August 2002 showed that the Veteran complained of being tired for the past four to five months and inability to sleep. The assessments included depression, fatigue, coronary artery disease and non-insulin dependent diabetes. In September 2002, it was noted that he had been seen one month before with depression and started on Paxil. He related that he was feeling much better and was sleeping well. In April 2003, the Veteran complained of pain in the left side of the neck with radiation to the left upper back. He stated that he had had this in the past. Following evaluation, an assessment of neck pain, most likely due to degenerative joint disease was recorded. A January 2004 clinic entry noted that he complained of a pruritic rash of the upper chest that he had had for several days. He was observed to have clear, macular eruptions over the over chest. Assessments included rash of upper chest. Between 2002 and 2004, clinical records from Behavior and Stress Management Psychiatry reflect that the Veteran was treated for depression and was sleeping better.

C. Mark Newton, MD, FACC, wrote in July 2005 that the Veteran was welcome to his medical records but that "I really can't comment on any potential carcinogens or other hazards that you may have been exposed to in the environment, and I don't know how to quantify any environmental exposures you may have had that may be contributing to your diabetes, coronary artery disease and history of stroke." It was added that "I don't know exactly where you were and what you might have been exposed to." 

The Veteran was seen at Ambulatory Care Center - Internal Medicine Specialists by Dr. Clore in July 2005 where it was noted that he returned for follow-up for type II diabetes mellitus times 15 years, and coronary artery disease, status post PTCA in 1991. In a letter dated in July 2005, Dr. Clore wrote that "You have requested consideration of the possibility that exposure to carcinogens in the past may have led to the development of diabetes currently." He stated that "I of course do not have any record of any exposures that you may have had. I can only tell you and relate again that when I first met you in January 1994 you had recently been discovered to have diabetes mellitus and had been originally placed on Glyburide for this." Dr. Clore related that "There are of course many explanations for the development of type 2 diabetes mellitus. However, the most common is genetic predisposition to insulin resistance and decreased insulin secretion that leads eventually to elevated blood sugars and what we call diabetes mellitus."

In February 2007, the appellant was seen indicating that his blood pressure was elevated. It was reported that there was some tenderness in the right posterior neck. The assessments included hypertension and probable degenerative joint disease of the cervical spine. In August 2007, the Veteran was seen for an eye examination where a medical history that included PTSD with depression and panic attacks was recorded. It was also noted that he was married with two children and had had a vasectomy in 1975.

In a statement dated in July 2007, the Veteran's wife related that they had gotten married in July 1961, three weeks before his deployment to Metz, France. She stated that in addition to their separation, she suffered a miscarriage in October 1961, and that the Veteran had had additional situational trauma, mental anguish financial hardship and depression because of the sudden death of his brother in March 1963. She said that this caused her husband to return differently than when he left, and that after his return, he was fearful, depressed, tense, agitated, and appeared to be suffering from psychological trauma. She stated that his experiences left him feeling helpless with sleep disturbance due to emotional distress caused by his deployment and situational stresses due to inability to secure a compassionate transfer after events in March 1963 that left them both devastated and depressed. 

The following is among evidence received in support of the claim at the Veteran's hearing in September 2011 for which RO consideration was waived.

A letter to Dr. N. Emillani from the Veteran stating that he served in the Army overseas for most of the time and believed he had developed PTSD as the result of psychological trauma due to chronic situational stresses as the result of the long deployment, traumatic accidental death of his brother, inability to resolve his fears, inability to aid his wife who had suffered a miscarriage with their first child, and depression from that experience. The Veteran outlined the numerous symptoms he had experienced since that time and stated that when he first presented for treatment in 2003, he complained of severe stress which he believed at the time was related to the postal environment that "unknown to me at that time was situational stresses and conditions which began or [were] exacerbated by my military service 20 or more years earlier" which he stated had led to his current condition. The appellant requested that the doctor provide a diagnosis based on the facts as presented by him and based on recent knowledge as to "a cause and effect relationship between events 30 to 40 years before" and send it to VA.

Medical literature pertaining to the onset and clinical course of anxiety disorders, including PTSD, was submitted in support of the claim.

A February 2008 statement from J. L. M. was received in which he wrote that he and the Veteran grew up in the same community and that they were both stationed at Fort Lee in 1963 at the same time. He related that they discussed the Veteran's brother's death that had occurred six to eight months before and that he noticed that the appellant looked very distraught and under a lot of stress. 

In an August 2011 statement from the Veteran's wife, she wrote that immediately following his return from a two-year deployment in Metz, France, she started to notice behaviors that included irritability, anger, difficulty concentrating or completing tasks and emotional anesthesia. 

In a September 2001 statement from N. A. Emillani, M.D., it was noted that the Veteran had been seen by him or her for the past two years, and that he had been given a diagnosis of PTSD that was significantly severe and was considerably affecting his life. The physician related that the appellant met all the diagnostic criteria for the diagnosis and had been encouraged to file for disability compensation on this basis. 

Legal Analysis

Service connection for diabetes mellitus, type II, a cardiovascular disorder, to include hypertension, coronary artery disease and plaque in the aorta, and arthritis/disc disease of the back

The Veteran is currently shown to have type II diabetes mellitus, cardiovascular disease, to include hypertension, coronary artery disease and plaque in the aorta, degenerative joint (arthritis) and disc disease of the back. He maintains that he did not have these disorders prior to service.

As indicated above, however, service treatment records do not refer to any complaints or treatment relative to type II diabetes, hypertension, heart disease or arthritis of the back. No back injury or treatment is documented during active duty. On examination in November 1963 at discharge from service, the endocrine, musculoskeletal, and cardiovascular systems were evaluated as normal. Blood pressure and urinalysis were within normal limits and a chest X-ray was negative. Additionally, as delineated in detail earlier, the Veteran denied any symptoms or complaints relative to these claimed disorders on his Report of Medical history.

As reported previously in the factual background above, evidence of type II diabetes, cardiovascular disease, including hypertension, coronary artery disease, plaque in the aorta, and degenerative joint (arthritis) and disc disease of the back was not demonstrated until decades after discharge from active duty. In view of such, the Board finds that these disorders were not of service onset, and that the presumption of service connection for such does not attach. This is because no evidence has been received to show that diabetes mellitus, type II, cardiovascular disease, to include hypertension, coronary artery disease and plaque in the aorta, as well as arthritis/disc disease of the back, were manifested during service or within one year of service discharge. There is no reliable evidence in the record to show other than that disabilities were first clinically indicated more than a year after separation from active duty. In this instance, the Board is not presented with mere silence. Rather, the November 1963 discharge examination disclosed that the endocrine, musculoskeletal, and cardiovascular systems were normal. The blood pressure reading, chest X-ray and urinalysis were not indicative of any disease process. Furthermore, as late as 1986, more than two decades after service, the Veteran affirmatively denied that he had diabetes, a heart condition, and high blood pressure. 

In view of such, the Board finds that service connection for a diabetes mellitus, type II, cardiovascular disease, to include hypertension, coronary artery disease and plaque in the aorta, and arthritis/disc disease of the back are not warranted, to include on a presumptive basis. See 38 U.S.C.A. §§ 1101, 1110, 1112, 1113 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2014). 

In evaluating a claim, the Board must determine the value of all evidence submitted, including lay and medical evidence. Buchanan v. Nicholson, 451 F.3d 1331, 1335 (2006). The evaluation of evidence generally involves a three-step inquiry. First, the Board must determine whether the evidence comes from a "competent" source. Competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159(a); Layno v. Brown, 6 Vet. App. 465, 470 (1994) (providing that a Veteran is competent to report on that of which he or she has personal knowledge). Lay evidence can also be competent and sufficient evidence of a diagnosis if (1) the medical issue is within the competence of a layperson, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. See Kahana v. Shinseki, 24 Vet. App. 428, 433 (2011); Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007).

If the evidence is competent, the Board must then determine if the evidence is credible, or worthy of belief. Barr v. Nicholson, 21 Vet. App. 303, 308 (2007) (observing that once evidence is determined to be competent, the Board must determine whether such evidence is also credible). After determining the competency and credibility of evidence, the Board must then weigh its probative value. In this regard, the Board may properly consider internal inconsistency, facial plausibility, and consistency with other evidence submitted on behalf of the claimant. Caluza v. Brown, 7 Vet. App. 498, 511-12 (1995).

In this instance, it is found that the normal examinations as to the chest, heart, cardiovascular system, endocrine system, spine and musculoskeletal system and neurologic status, as well as the Veteran's denial of pain or pressure in chest, palpitation or pounding heart, high blood pressure, sugar in the urine, arthritis or rheumatism, bone, joint or other deformity, and neuritis are far more probative than remote statements of in-service onset. Consequently, the record does not demonstrate continuity of symptomatology as the Veteran's statements to this effect are not credible. 

In this regard, the Board concludes that the Veteran has not been a reliable historian and that his account of the claimed disabilities deriving from service is self-serving and not credible. This is evidenced by letters by his doctors in July 2005 in which he appeared to be "shopping" for environmental hazards to support and bolster his claims that diabetes and cardiovascular disease were related thereto. The more probative evidence establishes that type II diabetes, and cardiovascular disorders, to include hypertension, coronary artery disease, plaque in the aorta, as well as arthritis/disc disease developed many years after active duty and are unrelated to service. In fact, in July 2005, the Veteran's treating physician advised him that the most common etiology of diabetes was a genetic predisposition to insulin resistance and decreased insulin secretion that leads eventually to elevated blood sugars and diabetes mellitus. The Board would also point out none of the assessments of the medical professionals after service have proposed that any of the claimed disorders are related to the Veteran's diet during active duty or any other incident of service, including environmental hazards, nor has the appellant presented any evidence in support of those contentions except for his lay statements that are not deemed to be credible. As such, the Veteran's self-assessment in these matters is neither competent nor probative. 

In summary, the Board concludes that there is no competent and credible evidence indicating that diabetes mellitus, type II, cardiovascular disorders, to include hypertension, coronary artery disease and plaque in the aorta, or degenerative disc/joint disease of the back are related to service or to any incident therein. These claimed diseases were not noted during service, as discussed, and the Veteran did not have characteristic manifestations of these disease processes during service. This is confirmed by the normal findings at separation from service. Thus, chronicity of these diseases cannot be established. 38 C.F.R. § 3.303(b). The Board thus finds that the preponderance of the evidence is against the claims and service connection is denied. See 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49, 54-56 (1990).

Service connection for skin rash other than onychomycosis and erectile dysfunction

The Veteran is currently shown to carry diagnoses of skin rash and erectile dysfunction. He maintains that he did not have these disorders prior to service.

As indicated above, however, service treatment records do not refer to any complaints or treatment relative to the skin or penis. On examination in November 1963 at discharge from service, the skin and genitourinary system were evaluated as normal. No pertinent defects were recorded on the service discharge examination report. On the Report of Medical history at service discharge, the appellant indicated that he had foot trouble but this was noted to be related to pruritis (itchiness). Evidence of skin rash was not demonstrated for decades after discharge from active duty. In view of such, the Board finds that these disorders were not of service onset. This is because there is no indication that skin rash or erectile dysfunction was manifested during active duty. There is no reliable evidence in the record to show other than that such disabilities were first clinically indicated many years after separation from active duty. The Board is not presented with mere silence in this instance. Rather, the November 1963 separation examination disclosed that the genitourinary system and skin were normal. In view of such, the Board finds that service connection for skin rash and erectile dysfunction are not warranted. The Board observes the indication of pruritis on the Veteran's feet at service discharge, however we note that he is already service connected for onychomycosis.

As to above, the Veteran is competent to report that he has had problems with his skin and erectile dysfunction since service. However, in a merits context, the lack of evidence of treatment may bear on the credibility of the evidence of continuity. The Board as fact finder is obligated to and fully justified in determining whether lay evidence is credible in and of itself, i.e., because of possible bias, conflicting statements, etc. Similarly, the Board can weigh the absence of contemporaneous medical evidence against the lay evidence of record. See Buchanan v. Nicholson, 451 F.3d 1331 (2006). 

In this instance, it is found that the normal examinations as to the skin, lower extremities and genitourinary system, as well as the lack of any complaints in these respects at service discharge are far more probative than remote statements of in-service onset. In this regard, the Board concludes that the Veteran has not been a reliable historian and that his account of the claimed disabilities deriving from service is self-serving and not credible. The more probative evidence establishes that skin rashes and erectile dysfunction developed many years after active duty and are unrelated to service. 

In summary, the Board concludes that there is no reliable and probative evidence indicating that skin rash or erectile dysfunction are related to service or to any incident therein. As well, as service connection for type II diabetes is denied, that is no need to discuss whether erectile dysfunction is secondary thereto. See 38 C.F.R. § 3.310 (2014). The Board thus finds that the preponderance of the evidence is against the claims and service connection is denied. See 38 U.S.C.A. § 5107(b); Gilbert, 1 Vet. App. at 54-56.

Service connection for disability claimed as nervous stomach, a sleep disorder, and tingling of the feet

The Veteran's service clinical records reflect no treatment for neurological or gastrointestinal symptoms nor were any complaints referable to sleeplessness noted. On the Report of Medical history at service discharge, the appellant denied neuritis and frequent trouble sleeping. He indicated that he had foot trouble but this was noted to be related to pruritis (itchiness). Neurologic, gastrointestinal, and lower extremity status were evaluated as normal. Post service records refer to the Veteran as having a nervous stomach in March 1991, decreased vibratory and light touch sensation in the feet in September 1997 and sleeping difficulties in August 2002, subsequent to which he was treated for depression. The post service record thus reflects that none of these complaints or symptoms were indicated for decades after discharge from active duty. The Board observes, however, that no specific clinical findings and/or diagnoses have ever been recorded with respect to nervous stomach, a sleep disorder, and tingling of the feet.

The Board has considered that the appellant is competent to report symptoms characterized as nervous stomach, a sleep disorder and tingling of the feet as such come to him through the senses. See Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Falzone v. Brown, 8 Vet. App. 398, 405 (1995). The Board points out, however, that there are fleeting references to such symptoms in the record. The Veteran has not identified or produced any evidence, medical or otherwise, that tends to show current disease or injury in the nature of a nervous stomach, sleep disorder and tingling of the feet for which service connection is being sought. He presents only vague statements and testimony attesting to nervous stomach, sleep disorder and tingling of the feet related to service. 

Congress specifically limits entitlement to service connection for disease or injury to cases where there is a disability. In the absence of proof of current disability due to disease or injury there can be no valid claim. See Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). Additionally, the Federal Circuit has noted that in order for a veteran to qualify for entitlement to compensation under statute, the existence of a disability must be proved, and as having resulted from a disease or injury that occurred in the line of duty. See Sanchez-Benitez v. Principi, 259 F.3d 1356 (2001). The Board accepts that the Veteran may have symptoms he characterizes as nervous stomach, sleep disorder and tingling of the feet as asserted in statements in the record and testimony. However, he has not established a viable pathology (injury or disease) that would account for his vague complaints. The only evidence in support of the claim is the Veteran's own statements and testimony that he has nervous stomach, sleep disorder and tingling of the feet without any factual foundation that establishes disability, disease or injury related to service. The Board thus concludes that there is no disability, disease, or residuals of injury in this regard for which service connection may be granted. Moreover, to the extent that the Veteran ascribes nervous stomach, sleep disorder and tingling of the feet to diabetes or an acquired psychiatric disorder, service connection is not in effect for a psychiatric disability. Therefore, it is unnecessary to discuss whether nervous stomach, sleep disorder and tingling of the feet might be secondary to a service-connected disorder at this juncture.

Under the circumstances, the preponderance of the evidence is against the claims of nervous stomach, sleep disorder and tingling of the feet and there is no doubt to be resolved. Service connection for such must thus be denied. See 38 U.S.C.A. § 5107(b); Gilbert, 1 Vet. App. 49 (1990). 


Service connection for gastroesophageal disease, to include reflux and ulcer

The Board has carefully reviewed the extensive clinical evidence but finds that service connection for gastroesophageal disease, to include reflux and ulcer is not warranted. Although it is shown that the Veteran reports having symptoms or such, the record does not corroborate his assertions. Neither private clinical records dating from 1986 nor VA outpatient clinical notes dated in 2007 or 2009 document or confirm a gastroesophageal process. No diagnosis as to either claimed disorder is shown in the record. No complaint or reference to reflux or ulcer is recorded in any clinical data of record. 

The Board points out that a key element in establishing service connection is to show that the Veteran currently has a diagnosis or symptoms of the disability for which service connection is sought. See 38 U.S.C.A. §§ 1110, 1131 and 38 C.F.R. 3.303. In this case, there is no clinical evidence indicating that the Veteran has reflux or ulcer. 

Lay statements may be competent to support a claim for service connection by supporting the occurrence of lay-observable events or the presence of disability or symptoms of disability subject to lay observation, such as complaints of gastrointestinal distress or symptoms experienced. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); see also Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006) (addressing lay evidence as potentially competent to support the presence of disability even where not corroborated by contemporaneous medical evidence). However, whether the Veteran has reflux or ulcer requires specialized training for a determination and is therefore not susceptible of lay opinion. The Veteran's statements alone cannot be accepted as competent medical evidence. A clinical professional has the greater skill. 

The Board thus concludes that there is no current competent evidence indicating that the Veteran has a gastroesophageal disorder, including reflux and ulcer at this time. Moreover, on personal hearing in September 2011, he clearly demurred as whether he had any current disability in this regard, only stating that it was much better and that he did not suffer any effects as in previous years. In any event, in the absence of a disability due to disease or injury in service, there can be no valid claim. See Sanchez-Benitez v. Principi, 259 F.3d 1356 (2001). Under the circumstances, the Veteran has not met the requirements to establish service connection for gastroesophageal disease, including reflux and ulcer, and service connection must be denied. The preponderance of the evidence is against these claims. See 38 U.S.C.A. § 5107(b); Gilbert, 1 Vet. App. 49.

The Board notes that as to the disabilities claimed above, the Veteran has voiced assertions that some or all may be due to environmental exposure to chemical and/or bacterial and/or radiological agents of some type. However, the assertions are vague. His report that he could have been exposed to something is remarkably lacking in detail, to include the nature of the exposure and why he thinks he was actually exposed to some specific environmental hazard. His vague statements in this regard do not give rise to the need for additional development for consideration of different law or regulations pertaining thereto. 

Service connection for a dental condition

Dental disabilities which may be awarded compensable ratings include chronic osteomyelitis or osteoradionecrosis of the maxilla or mandible, loss of the mandible, nonunion or malunion of the mandible, limited temporomandibular motion, loss of the ramus, loss of the condyloid or coronoid processes, loss of the hard palate, loss of teeth due to the loss of substance of the body of the maxilla or mandible and where the lost masticatory surface cannot be restored by suitable prosthesis, when the bone loss is a result of trauma or disease but not the result of periodontal disease. 38 C.F.R. § 4.150, Diagnostic Codes 9900- 9916. 

In this case, the Veteran does not contend, nor does any evidence of record indicate, that he sustained any trauma to his teeth or jaw in service. He claims that he had a tooth removed in service and a fragment was retained causing subsequent pain and discomfort. He presented testimony on personal hearing in September 2011 that since surgery some five to seven years before, he had had no further problems with the tooth. The Board points out, however, that service connection requires evidence that establishes that a veteran currently have a dental disability for which service connection is being sought. The Board points out that the existence of a current disability is the cornerstone of a claim for VA disability compensation. See Degmetich v. Brown, 104 F.3d 1328 (1997) (holding that section 1110 of the statute requires the existence of a present disability for VA compensation purposes); see also, Gilpin v. West, 155 F.3d 1353 (Fed. Cir. 1998); Brammer v. Derwinski, 3 Vet.App. 223, 225(1992); Rabideau v. Derwinski, 2 Vet.App. 141, 144 (1992). See also McClain v. Nicholson, 21 Vet.App. 319 (2007). 

Therefore, in this case, not only is the dental condition the Veteran is claiming not service connectible for compensation purposes, but also there is no lay or clinical evidence of current disability. The Board is bound by VA regulations. Where the law and not the evidence is dispositive of the issue before the Board, as in this case, the claim must fail due to the absence of legal merit or the lack of entitlement under the law. See Sabonis v. Brown, 6 Vet.App. 426, 430 (1994). Accordingly, the Veteran's appeal as to service connection for a dental condition is denied.


ORDER

Service connection for a skin rash is denied.

Service connection for a disability claimed as nervous stomach is denied.

Service connection for gastroesophageal disease, to include reflux and ulcer, is denied.

Service connection for diabetes mellitus, type II, is denied.

Service connection for erectile dysfunction is denied.

Service connection for tingling of the feet is denied.

Service connection for a cardiovascular disorder, to include hypertension, coronary artery disease and plaque in the aorta is denied.

Service connection for a back disorder is denied.

Service connection for a sleep disorder is denied.

Service connection for a dental condition is denied.


REMAND

On review, the Board finds that a remand is necessary to ensure that there is a complete record upon which to decide the Veteran's claim for service connection for an acquired psychiatric disorder, to include PTSD. Specifically, a new psychiatric examination is necessary to confirm whether the Veteran has a valid PTSD diagnosis based upon the Veteran's reported stressors, namely to include, "chronic situational stressors" due to long deployment (in France), and learning of the death of his brother while in service. The Factual Background portion of the Board's decision above also highlights some pertinent facts for the PTSD claim. 

Accordingly, the case is REMANDED for the following action:

1. Afford the Veteran a VA examination with an psychiatrist or psychologist to (a) confirm whether or not the Veteran has a valid PTSD diagnosis based upon the Veteran's reported stressors, and (b) to determine the nature and likely etiology of any psychiatric disorders other than PTSD. 

Any and all studies, tests, and evaluations deemed necessary by the examiner should be performed, but should include psychological testing, including PTSD sub scales. The examiner is requested to review all pertinent records associated with the claims file.

With respect to PTSD, based on the Veteran's reported stressors, the examiner should determine whether the diagnostic criteria to support the diagnosis of PTSD have been satisfied. If a PTSD diagnosis is deemed appropriate, the examiner should then comment upon the link between the current symptomatology and the stressors. The examiner should explicitly list which stressors have been considered in the Veteran's PTSD diagnosis, if there is such a diagnosis. The examiner should specifically address Dr. N. Emiliani's assessment of the Veteran and review the October 2007 letter from the Veteran to Dr. N. Emiliani which provides a summary of the Veteran's claimed stressors. 

The examiner should identify all current psychiatric disorders. For each disorder identified other than PTSD, the examiner should state whether it is at least as likely as not (i.e., there is at least a 50 percent probability) the disorder is causally or etiologically related to any aspect of the Veteran's service.

A clear rationale for all opinions would be helpful and a discussion of the facts and medical principles involved would be of considerable assistance to the Board.

2. When the development has been completed, the case should be reviewed by the AOJ on the basis of additional evidence. If any benefit sought on appeal remains denied, the Veteran and his representative should be furnished with a supplemental statement of the case.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




____________________________________________
H. N. SCHWARTZ 
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs